JAMES A. QUADRA, State Bar No. 131084
REBECCA COLL, State Bar No. 184468
ROBERT D. SANFORD, State Bar No. 129790
QUADRA & COLL, LLP
1 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 426-3502
service@quadracoll.com

Attorneys for Plaintiff Sabrina Cervantes

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CERVANTES,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SACRAMENTO, CALIFORNIA; DANIEL WILLIAMS; BAILEY FOSTER; KEVIN LUCAS; KRISTIN BEAL; DOES 1-20, inclusive<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**Demand for Jury Trial** |

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction under 28 U.S.C. §§1331 and 1343(a), since this action seeks redress for Defendants' violation of Plaintiff Sabrina Cervantes' ("Cervantes") civil rights protected by the United States Constitution and federal law, including 42 U.S.C. §1983.

2. This Court has supplemental subject matter jurisdiction under 28 U.S.C. §1367 regarding Cervantes' claims alleged under California law, including California Civil Code §52.1.

3. Venue properly lies in the Eastern District of California under 28 U.S.C. §1391, since the wrongful acts and omissions of Defendants occurred on May 19, 2025 in Sacramento, California.

## II. THE PARTIES

4. Cervantes is a competent adult and Latina who is, and was at all relevant times, a duly elected member of the California State Senate.

5. Defendant City of Sacramento, California ("City") is, and was at all relevant times, a municipal corporation or governmental subdivision organized and existing under the laws of the State of California.

6. Defendant Daniel Williams ("Williams") was at all relevant times a police officer with the Department.

7. Defendant Bailey Foster ("Foster") was at all relevant times a police officer with the Department.

8. Defendant Kevin Lucas ("Lucas") was at all relevant times a police officer with the Department.

9. Defendant Kristen Beal ("Beal") was at all relevant times a police sergeant with the Department.

10. Senator Cervantes is unaware of the true names and capacities of Defendants sued herein as Does 1 through 20 and therefore sue such Defendants by fictitious names. Cervantes will amend this Complaint to allege the true names and capacities of DOES 1 through 20 when ascertained. Cervantes is informed and believes that each of said Defendants designated herein is legally responsible and liable in the same manner for the events and happenings described herein and for the causes of action alleged herein and are therefore liable and responsible to Cervantes for an amount to be determined or for such other relief as may be afforded.

11. Senator Cervantes is informed and believes that each Defendant specifically or fictitiously named herein acted in his, her or its own right and is the agent, employee, representative or co-conspirator of some or all the other Defendants, as to each of the matters set forth herein. Each such Defendant, whether specifically or fictitiously named, was at all times acting within the scope and purpose of such agency, employment, representation, or conspiracy, or alternatively, if the acts of each such Defendant were not authorized at the time, such acts were subsequently ratified by the appropriate principal and Defendant.

12. Senator Cervantes is informed and believes, and on that basis alleges, that the City is liable for the constitutional violations alleged herein because the City's officials or employees, acting under color of law, deprived a person of their particular rights under the United States Constitution and: (i) the officials or employees acted pursuant to an adopted policy, custom, or practice; (ii) the acts of a final policy maker of the City deprived Senator Cervantes of her constitutional rights by knowing about and approving of the officials' or employees' acts or omissions; or (iii) the constitutional deprivations were a result of the City's failure to train its employees to handle the usual and recurring situations with which they must deal.

## III. FACTUAL ALLEGATIONS

### A. Factual Background

13. In 2016, California voters elected Cervantes to the California State Assembly to represent California's 58th Assembly District which encompasses portions of northwestern Riverside County and southwestern San Bernardino County. Cervantes was the first openly LGBTQ+ Latina to represent this District in the Assembly.

14. In November 2024, California voters elected Cervantes to the California State Senate to represent California's 31st Senate District, which encompasses urban and suburban parts of the Inland Empire in northwestern Riverside County.

15. On January 4, 2025, Senator Cervantes introduced a bill in the California Senate, Senate Bill 274 ("SB 274"), to curb potential abuses by law enforcement agencies, including the Department, associated with use of automated license plate reader (ALPR) systems, which are searchable computerized databases resulting from the operation of one or more cameras combined with computer algorithms to capture and convert images of registration plates and the characters they contain into computer readable data. ALPR systems allow for the widespread and systematic collection of license plate information. For example, Department recorded up to 1.7 million scans in just one week. Today, over 230 police and sheriff departments in California use ALPR systems, with dozens more planning to adopt them. While ALPR technology can be a useful law enforcement tool, it poses serious risks to privacy when misused. SB 274 addressed

these privacy risks, as described in detail in the City of Sacramento – Claim Form ("Claim") which is attached as **Exhibit A** hereto and incorporated herein by reference.

16. Law enforcement agencies and associations throughout California, such as the California Police Chiefs Association, opposed California SB 274, arguing it would hinder their ability to solve crimes. Sacramento Police Chief Kathy Lester ("Lester") is a member of the California Police Chiefs Association. The Sacramento County Grand Jury ("Grand Jury") concluded in its 2024 investigative report entitled "Keep Your Eyes Off My Privacy!" that the Department, and other law enforcement agencies operating in Sacramento County, violated existing California law codified at Civil Code §§1798.90.5 et seq., which limits the use of ALPR data, by sharing ALPR data with out-of-state law enforcement agencies. The Grand Jury concluded this practice aided the potential prosecution of women residing out-of-state who traveled to California to seek or receive healthcare services but could then face legal action by authorities in their home state. On August 8, 2025, Lester responded to the Grand Jury by claiming that the Department ceased providing ALPR data to out-of-state law enforcement agencies on June 11, 2024, but Lester provided no further information.

**B. The Department's Wrongful Arrest of Cervantes**

17. On May 19, 2025, Senator Cervantes was lawfully and safely driving a vehicle owned by the State of California, heading east on S Street in Sacramento, California. Senator Cervantes entered the intersection of S Street and 14th Street at approximately 12:55 p.m. Senator Cervantes had the right-of-way, as there are stop signs on 14th Street but not on S Street. A driver of another vehicle failed to come to a complete stop or yield to traffic having the right of way at the stop sign on 14th Street, and crashed into the passenger side door of the vehicle that Senator Cervantes was driving. The impact injured Senator Cervantes and caused significant damage to the vehicle Senator Cervantes was driving. Senator Cervantes called State Senate Special Services, and the State Fleet Manager arrived on the scene within minutes and waited for police to arrive. Senator Cervantes' chief of staff brought Senator Cervantes to the hospital for medical treatment.

18. Senator Cervantes is informed and believes, and on that basis alleges, that

Defendant Williams arrived at the scene of the accident at approximately 1:35 p.m., approximately 40 minutes after the accident, and was already aware that Senator Cervantes had driven one of the vehicles. Senator Cervantes had already left the scene to seek medical care prior to Officer Williams' arrival.

19. As set forth in the Claim, the Department's disparate treatment of Senator Cervantes became apparent immediately upon the arrival of the Department's police officers at the accident scene. Despite clear damage to the vehicles showing that the other driver, a young white woman, had t-boned Senator Cervantes' vehicle after entering an intersection where the driver had a stop sign and Senator Cervantes had the right of way, Defendant Officer Williams treated the at-fault driver with a deference and respect which was not accorded to Senator Cervantes.

20. After briefly interviewing the at-fault driver, Defendant Officer Williams and Defendant Officer Foster went to Kaiser Hospital where they interviewed Senator Cervantes. Defendants Williams and Foster questioned Senator Cervantes for much longer and much differently than Defendant Williams had questioned the at-fault driver, requiring exact details about what happened during the accident. During the interview, Senator Cervantes was experiencing pain in her back, legs, and entire left side of her body, all of which she described to the officers. Despite being in pain from the accident, Senator Cervantes remained standing while being interviewed by officers and displayed no difficulty with her balance.

21. Officer Williams knew that Senator Cervantes was not at fault for the accident, but he nevertheless requested that she submit to a subjective sobriety test involving an officer observing Senator Cervantes' eyes in response to stimuli. Senator Cervantes asked whether the at-fault driver had been given such a test, which Officer Williams refused to answer. Senator Cervantes, who had broken no traffic laws and who was the victim of a dangerous driver, was troubled by Defendants Williams and Foster's motives and their proposed use of subjective observations to decide whether she was under the influence. Senator Cervantes requested to contact Senate counsel before submitting to the subjective test. She also offered to provide the results of the chemical tests that the hospital would perform to demonstrate her sobriety.

22. Rather than accept Senator Cervantes' offer to have the hospital provide test results to the Officers, Officer Williams responded that they could not accept the hospital's test result because they are protected by Senator Cervantes' privacy rights. Obviously, Senator Cervantes was able to consent to disclosure of drug and alcohol tests (which the hospital performed and which were negative), but Officers Williams and Foster wanted to perform their less accurate and subjective test instead of accepting the chemical tests performed by the hospital. During Defendants Williams and Foster's initial interview of Senator Cervantes, which lasted approximately ten minutes, Senator Cervantes did not slur her words, walk with an unsteady gait, smell of alcohol, or have any indicators of being under the influence. She was suffering from a spine injury and was in pain, which caused her to move with care, but she did not sway, stumble, weave back and forth as she walked down a long hallway from the emergency room waiting area to be interviewed, or give any other indication of being under the influence.

23. Shortly after the initial interview with Senator Cervantes, Officer Foster spoke by phone to a person he referred to as "Sarg" and made false statements about Senator Cervantes and did not disclose that Senator Cervantes had offered to have the hospital disclose her test results to demonstrate she was sober.

24. Approximately 15 minutes after the first interview of Senator Cervantes concluded Defendant Williams again asked Senator Cervantes to submit to a subjective sobriety test. Senator Cervantes again asked if the person who was at fault was being subjected to the same test, which Defendant Williams again declined to answer. Senator Cervantes asked if she could simply receive a blood test instead, and at first Defendant Williams seemed to agree, so Senator Cervantes stated she would step aside to contact counsel to confirm she could provide a blood test.

25. Within minutes, bodycam footage reflects Defendant Foster advising somebody by phone that Senator Cervantes was on the phone checking with counsel about simply providing a blood test. After that phone call, Defendant Foster advised Defendant Williams that "no matter what, we're writing a warrant." Defendants Foster and Williams did not have probable cause for

a warrant; in fact, body cam footage reveals Defendant Williams commenting, "If I had to make a wild guess, there is a possibility – I have a reasonable suspicion that she has something on board…." Neither reasonable suspicion nor a "wild guess" is a basis to effect a lawful arrest in California nor to seek a warrant.

26. In order to obtain the warrant against Plaintiff, Defendant Lucas signed a warrant affidavit under penalty of perjury wherein he made multiple false statements. Defendant Lucas falsely stated that Senator Cervantes had refused to submit to a blood test. Defendant Lucas also falsely claimed that Senator Cervantes had an unsteady gait, slurred speech, and an appearance of drowsiness, and, even if any of those statements had been truthful, Defendant Lucas concealed the material facts that Senator Cervantes had been injured in a car crash and had told officers that her back and the whole side of her body was in pain. Outrageously, the warrant affidavit cited Senator Cervantes' alleged refusal to undergo a subjective sobriety test as reason for the alleged probable cause to issue a warrant, yet concealed the material fact that Officer Williams repeatedly reiterated to Senator Cervantes that she had the absolute right to refuse the purely voluntary test. Officer Lucas also failed to disclose the source and basis of key supposed observations, preventing the judge from independently evaluating reliability of it and implying that Officer Lucas was involved in the investigation.

27. On information and belief, Sergeant Beal directed that a warrant be requested to draw Senator Cervantes' blood despite lack of probable cause. On information and belief, Defendants Williams and Foster conspired with Defendant Lucas and Sergeant Beal to fabricate probable cause for a warrant.

28. Approximately five hours and fifteen minutes after the accident, Officer Williams informed Senator Cervantes for the first time that she would be cited for driving under the influence and that the citation was considered an arrest. A few minutes later, Senator Cervantes' blood was drawn, which showed that she was not under the influence of drugs or alcohol. Given her innocence, the Sacramento County District Attorney did not press charges against Senator Cervantes.

29. Senator Cervantes is informed and believes that Defendants Williams, Foster and

Lucas acted at the direction of Defendant Beal in violating Senator Cervantes' rights.

**C. The Department's False Report to the California Department of Motor Vehicles**

30. After Senator Cervantes' blood was drawn, Officer Williams completed a false statement under penalty of perjury stating that Senator Cervantes had refused to complete a chemical test after her arrest in violation of California Vehicle Code §23612, and that Senator Cervantes had refused to state what time she stopped driving. This false statement was transmitted by unknown personnel of the Sacramento Police Department, an agency of the City of Sacramento, to the California Department of Motor Vehicles ("DMV").

31. Because of this false report, Senator Cervantes' driver's license would have been suspended or revoked. In order to prevent the suspension or revocation of her driver's license, Senator Cervantes had to hire legal counsel to prove to the DMV that she violated no law. The DMV hearing officer set aside the order that would have suspended Senator Cervantes' driver's license after reviewing the evidence provided by Senator Cervantes' counsel, including irrefutable body camera footage showing that Senator Cervantes did not violate any law.

**D. The Department's Spoliation of Evidence and/or Violation of Department Policies Relating to Use of Body Worn Cameras**

32. There is a gap of about five minutes in the footage from Officer Williams' body camera, which Senator Cervantes is informed and believes occurred when Officer Williams deactivated his body camera in violation of the Department's General Order 525.07. Officer Williams did not audibly record any reason to deactivate his camera as required by Department General Order 525.07(F)(4).

33. In addition to the apparent improper deactivation of Officer Williams' body camera, in response to a valid request for the body camera footage of Defendant Beal, the Department stated that no such footage existed, even though Defendant Beal interviewed Senator Cervantes at the hospital and had at least one relevant cell phone conversation with Officers Williams and/or Foster.

**E. The Department's Defamation of Senator Cervantes**

34. Despite Senator Cervantes' innocence, unknown actors who are named as

Defendant Does 1 through 20, released to the press and/or other third parties the false claim that Senator Cervantes had been driving under the influence, to the detriment of Senator Cervantes' reputation. Senator Cervantes is informed and believes, and on that basis alleges, that Does 1 through 20 intentionally and knowingly released this false information with the intent to harm Senator Cervantes because of her sponsorship of SB Bill 274 and her status as a Latina member of the LGBTQ+ community.

**F. The City's Denial of Senator Cervantes' Government Claim**

35. Senator Cervantes timely filed the Claim with the City as required by California Government Code §§810 et seq., on September 8, 2025. The City denied the Claim in a written Notice of Claim Rejection, dated October 23, 2025, which is attached as **Exhibit B**.

**First Claim for Relief**
**42 U.S.C. §1983 – Fourth Amendment - Unlawful Search and Seizure**
**Based on False Search Warrant Affidavit**
**(Against Defendants Williams, Foster, Lucas, and Beal)**

36. Senator Cervantes incorporates by reference all allegations in the preceding paragraphs as if fully set forth here.

37. Defendants violated Senator Cervantes' rights guaranteed by the Fourth Amendment of the United States Constitution by making false statements under penalty of perjury in order to obtain a warrant, without probable cause, to draw Senator Cervantes' blood and conduct chemical sobriety test.

38. Defendant Lucas, deliberately or in reckless disregard for the truth, made false statements in his affidavit to obtain a judicial search warrant for a blood sample from Senator Cervantes. These false statements and deliberate omissions of material fact were the following:

a. That Senator Cervantes had refused an officer's request to provide a blood sample.

b. That Senator Cervantes had "thick slurred speech."

c. That Senator Cervantes had "slow speech."

d. That Senator Cervantes "appeared to be drowsy while speaking to Sacramento Police officers."

e. That Senator Cervantes was "unsteady of feet."

f. That when Senator Cervantes walked from the waiting room to a private room to be interviewed by the police officers, she had an "unsteady gait."

g. Omission of the material fact that Senator Cervantes had disclosed to officers that her back and entire left side was in pain from the accident, which would explain any observation of being "unsteady of feet" even if any existed, which it did not.

h. Omission of the material fact that Officer Williams told Senator Cervantes repeatedly that she was not required to submit to a subjective sobriety test, which involved an officer observing Senator Cervantes' eyes in response to stimuli. Instead, the affidavit used Senator Cervantes' decision to decline the subjective test based on Officer Williams' advice as evidence in support of the search warrant, asserting that declining the test was potentially "a stalling tactic attempting to delay the investigation of DUI."

i. Omission of the material fact that Senator Cervantes had offered to allow the hospital to release to the police the results of the chemical tests that the hospital would perform, which would prove her sobriety, and that the officers refused to accept this exculpatory evidence.

j. Omission of the material fact that Senator Cervantes' foregoing offer to share the hospital's chemical test results and her declining the officers' subjective eye movement test were both in the context of the officers unreasonably treating her as the perpetrator of a crime rather than the victim of a car accident where the other driver was at fault, and the officers' refusal to state if they were subjecting the at-fault driver to the same testing. (In fact, the other driver was *not* subjected to any drug or alcohol testing despite t-boning Senator Cervantes' vehicle and not being able to produce a driver's license at the scene.)

39. Defendant Lucas did not disclose in his affidavit the fact that, on information and belief, he did not personally speak to or observe the gait or speech of Senator Cervantes.

40. On information and belief, Defendants Williams, Foster and/or Beal deliberately

or in reckless disregard for the truth provided false information to Lucas, knowing that Defendant Lucas would include such false information in his warrant affidavit. The City failed to provide body worn camera footage reflecting the transmission of this false information to Lucas.

41. But for the dishonesty in the warrant affidavit, the affidavit would not have demonstrated probable cause for a search warrant for a blood sample.

42. As a proximate result of Defendants' unconstitutional conduct, Senator Cervantes has suffered damages, including emotional distress.

**Second Claim for Relief**
**42 U.S.C. §1983 – Unlawful Arrest in Violation of the Fourth Amendment of the United States Constitution**
**(Against Defendant Williams)**

43. Senator Cervantes incorporates by reference all allegations in the preceding paragraphs as if fully set forth here.

44. Defendant Williams violated Senator Cervantes' rights guaranteed by the Fourth Amendment of the United States Constitution by arresting Senator Cervantes without probable cause.

45. As a proximate result of Defendant Williams' unconstitutional conduct, Senator Cervantes has suffered damages, including emotional distress.

**Third Claim for Relief**
**42 U.S.C. §1983 – Fourteenth Amendment – Equal Protection**
**(Against Defendants Williams, Foster, Lucas, and Beal)**

46. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

47. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally treating an individual differently from others similarly situated based upon impermissible considerations, including protected class status, protected viewpoints, or arbitrary and discriminatory enforcement of the law.

48. At all relevant times, Defendants acted under color of state law.

49. Plaintiff was similarly situated to other drivers involved in traffic collisions and DUI investigations within the jurisdiction of Defendant officers, including drivers who exhibited

no objective signs of impairment and who offered or were willing to submit to chemical testing.

50. Unlike those similarly situated individuals, Plaintiff was subjected to escalated enforcement measures, including pursuit of a warrant and a compelled blood draw despite the absence of objective evidence of intoxication.

51. On information and belief, Defendants intentionally treated Plaintiff differently from similarly situated individuals because of impermissible considerations, including hostility toward Plaintiff's protected speech and legislative activity, sexual orientation, and/or ethnicity.

52. On information and belief, Defendants selectively enforced DUI laws against Plaintiff and departed from ordinary investigative practices in a manner that was motivated by discriminatory or retaliatory intent and not by legitimate law-enforcement objectives.

53. Defendants' actions were intentional, arbitrary, and not reasonably related to any legitimate governmental purpose.

54. As a direct and proximate result of Defendants' conduct, Plaintiff suffered deprivation of her constitutional right to equal protection of the laws and sustained damages including emotional distress, reputational injury, and other damages according to proof.

**Fourth Claim for Relief**
**42 U.S.C. §1983 – Deliberate Fabrication of Evidence / Due Process**
**(Against Defendant Williams)**

55. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

56. At all relevant times, Defendant Williams acted under color of state law and within the course and scope of his employment as a law-enforcement officer.

57. The Fourteenth Amendment protects individuals from being subjected to governmental legal or administrative proceedings based on deliberately fabricated, false, or materially misleading evidence created or submitted by state actors.

58. Defendant Williams knowingly, deliberately, or with reckless disregard for the truth prepared, executed, and/or submitted a materially false and misleading statement or report to the DMV as described herein.

59. Defendant Williams knew, or reasonably should have known, that submission of such false information would foreseeably create an administrative proceeding against Senator Cervantes for revocation of her driver's license and require her to defend these administrative proceedings.

60. As a direct and foreseeable result of Defendant Williams's false submission, the DMV initiated administrative proceedings against Plaintiff for revocation of her license and requiring Plaintiff to defend herself against adverse governmental action.

61. Plaintiff was required to retain counsel and expend resources to gather and submit objective evidence demonstrating the falsity of Defendant Williams's statements in order to prevent adverse action by the DMV.

62. The DMV proceedings were ultimately terminated in Senator Cervantes' favor only after Senator Cervantes hired counsel and expended legal fees to present truthful and exculpatory evidence demonstrating that Defendant Williams's statements were false or materially misleading.

63. Defendant Williams's deliberate fabrication and submission of false information caused Plaintiff to be subjected to governmental process and legal burdens she otherwise would not have faced, thereby depriving Plaintiff of liberty and property interests without due process of law.

64. Defendant Williams's conduct was intentional and undertaken with deliberate indifference or specific intent to interfere with Plaintiff's constitutional rights.

65. As a direct and proximate result of Defendant Williams's conduct, Plaintiff suffered damages including emotional distress, reputational injury, attorney's fees and expenses incurred to defend against DMV proceedings, and other damages according to proof.

**Fifth Claim for Relief**
**Deprivation of Civil Rights – Monell Violations**
**(Against City of Sacramento)**

66. Senator Cervantes incorporates by reference all allegations in the preceding paragraphs as if fully set forth here.

67. At all relevant times, Defendant City of Sacramento maintained policies, customs, and/or practices that were the moving force behind the constitutional violations alleged herein, including the violation of Plaintiff's rights under the Fourth Amendment.

68. The City, acting through the Sacramento Police Department and its supervisory personnel, maintained and tolerated a policy, custom, or widespread practice of permitting officers to prepare and swear to warrant affidavits without stating that they did not participate in the investigation and without adequate safeguards ensuring that the warrant affidavits were accurate.

69. As alleged above, Defendant Lucas signed a warrant affidavit containing false statements and material omissions despite, on information and belief, lacking firsthand knowledge of key asserted facts, and in deliberate indifference as to whether the facts in the affidavit were accurate. The City's policy or custom of allowing officers to swear warrant affidavits without stating that they did not participate in the investigation and without adequate safeguards to ensure that warrant affidavits were accurate foreseeably created a substantial risk that warrants would be issued without probable cause, and was a moving force behind the unconstitutional search of Plaintiff.

70. The City further maintained a policy, custom, or practice of instructing, encouraging, or allowing officers to disregard, refuse, or decline to consider objectively available chemical testing performed by hospitals or medical providers that could demonstrate a suspect's sobriety, which could be exculpatory evidence. This policy or practice foreseeably caused officers to ignore readily available exculpatory evidence directly relevant to probable cause determinations.

71. As alleged herein, Plaintiff offered to allow disclosure of hospital chemical testing results capable of objectively determining whether she was under the influence, yet officers refused to rely upon or accept such testing and proceeded to seek a warrant based on subjective observations and fabricated or omitted facts. The City's policy or custom of disregarding objective exculpatory testing was a moving force behind the unconstitutional search and seizure suffered by Plaintiff.

72. The City also maintained policies, customs, and practices of inadequate training, supervision, and discipline regarding: (a) constitutional limits on probable cause determinations for DUI investigations; (b) the obligation to provide truthful, complete, and materially accurate warrant affidavits; (c) the requirement to consider plainly available exculpatory evidence; and (d) the constitutional prohibition against searches and arrests unsupported by probable cause.

73. These policies, customs, and failures amounted to deliberate indifference to the constitutional rights of persons with whom City officers would come into contact, including Plaintiff, because the risk of unconstitutional arrests and searches was obvious and highly predictable.

74. In addition, on information and belief, a final policymaker for the City made, directed, ratified, or knowingly approved a decision to pursue enforcement action against Plaintiff because of her public legislative position concerning law-enforcement practices, including her sponsorship of SB 274, as described elsewhere in this Complaint, and/or based on her sexual orientation and/or her ethnicity. Such policymaker conduct constituted official municipal policy for purposes of Monell liability.

75. The foregoing policies, customs, practices, failures to train and supervise, and policymaker decisions were the moving force and proximate cause of the deprivation of Plaintiff's constitutional rights, including the compelled blood draw and related unlawful arrest.

76. As a direct and proximate result of the City's unconstitutional policies, customs, practices, and policymaker decisions, Plaintiff suffered damages, including emotional distress, reputational harm, and other damages according to proof.

**Sixth Claim for Relief**
**Violation of the Bane Act – California Civil Code §52.1**
**(Against All Defendants)**

77. Senator Cervantes incorporates by reference all allegations in the preceding paragraphs as if fully set forth here.

78. Defendants violated the Tom Bane Civil Rights Act, codified at California Civil Code §52.1, by interfering or attempting to interfere by threat, intimidation, or coercion with

Senator Cervantes' "rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state." Senator Cervantes' rights secured by the California Constitution or law includes, but is not necessarily limited to: (i) her right to be free from unreasonable searches and seizures under Article I, §13 of the California Constitution; (ii) her right not to be falsely imprisoned as defined by California Penal Code §236; (iii) her right not to be arrested without probable cause under California Penal Code §836(a); (iv) her right to have a search warrant issued only for probable cause based on a truthful supporting affidavit under California Penal Code §1525; (v) her right not to be subjected to any legal proceeding as the result of perjury as defined by California Penal Code §118; and (vi) her right not to have her driver's license suspended by the DMV based on false statements that Senator Cervantes refused to submit to a chemical sobriety test given by Defendants to the DMV in violation of California Vehicle Code §§13100 et seq.

79. Defendants acted with specific intent to interfere with Plaintiff's constitutional rights by using threats, intimidation, and coercion, including the compelled blood draw and misuse of the warrant process.

80. As a direct and proximate result of the conduct of Defendants, and each of them, Cervantes suffered and will continue to suffer damages in an amount to be proven at trial.

81. Defendants' violation of Senator Cervantes' rights as guaranteed by California Civil Code §52.1 entitles Senator Cervantes to compensatory and punitive damages, a $25,000 civil penalty, and attorney's fees, all of which are provided for in Civ. Code §§52.1(b) and 52, and are requested below.

82. At all relevant times, the individual Defendants were acting in the course and scope of their employment in taking the actions alleged herein.

83. In committing the wrongful acts alleged in this Complaint, Defendants knew or should have known that their actions were likely to injure Senator Cervantes. Senator Cervantes is informed and believes, and therefore alleges, that Defendants intended to cause injury to her and acted with a willful and conscious disregard of her rights as secured by California Civil Code §52.1, thus entitling her to recover punitive damages pursuant to California Civil Code

§52(b)(1).

**Seventh Claim for Relief**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

84. Senator Cervantes incorporates by reference all allegations in the preceding paragraphs as if fully set forth here.

85. Defendants engaged in extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing, Senator Cervantes to suffer emotional distress.

86. As an actual and proximate result of Defendants' outrageous conduct, Senator Cervantes suffered severe emotional distress.

87. In committing the wrongful acts alleged in this Complaint, the individual Defendants knew or should have known that their actions were likely to injure Senator Cervantes. Senator Cervantes is informed and believes, and therefore alleges, that the individual Defendants acted with oppression, fraud, or malice, thus entitling her to recover punitive and exemplary damages pursuant to California Civil Code §3294.

88. At all relevant times, the individuals Defendants were acting in the course and scope of their employment in taking the actions alleged herein.

89. As a proximate result of Defendants' intentional infliction of emotional distress, Senator Cervantes is entitled to compensatory and punitive damages in an amount to be proven at trial.

**Eighth Claim for Relief**
**False Arrest**
**(Against All Defendants)**

90. Senator Cervantes incorporates by reference all allegations in the preceding paragraphs as if fully set forth here.

91. Under California law, false arrest consists of the nonconsensual, intentional confinement or restraint of a person without lawful privilege.

92. The individual Defendants were acting in the course and scope of their

employment with the City of Sacramento in taking the actions alleged herein.

93. Defendants intentionally detained, restrained, and confined Plaintiff against her will by requiring her to remain under police authority while a compelled blood draw was performed pursuant to a warrant.

94. Although Defendants purported to act pursuant to a warrant, the warrant was obtained through materially false, misleading, and incomplete statements and omissions contained in the supporting affidavit, including mischaracterizations of Plaintiff's conduct and omission of exculpatory information.

95. On information and belief, Defendants knew or reasonably should have known that the statements used to obtain the warrant were false, misleading, or materially incomplete and that probable cause for the detention and blood draw did not exist.

96. Because the warrant was procured through materially false or misleading information, Defendants lacked lawful privilege to arrest or detain Plaintiff or to restrain her liberty during execution of the blood draw.

97. As a direct result of Defendants' conduct, Plaintiff was detained and not free to leave while officers executed the blood draw and related investigative procedures, constituting confinement and restraint under California law.

98. In addition, Defendant Williams issued a citation which constituted an arrest of Senator Cervantes.

99. Plaintiff did not consent to such detention and confinement.

100. The detention and restraint of Plaintiff were unreasonable, unlawful, and without legal justification.

101. As a direct and proximate result of Defendants' false arrest and false imprisonment, Plaintiff suffered damages including emotional distress, invasion of bodily autonomy, loss of liberty, reputational harm, and other damages according to proof.

**Ninth Claim for Relief**
**Defamation**
**(Against Does 1-20 and City of Sacramento)**

102. Senator Cervantes incorporates by reference all allegations in the preceding paragraphs as if fully set forth here.

103. Defendants Does 1-20 defamed Senator Cervantes by falsely communicating to the press that Senator Cervantes was driving under the influence of alcohol or drugs with the malicious intent of harming Senator Cervantes' reputation. The false communications wrongfully charged Senator Cervantes with a crime and exposed her to hatred, contempt, ridicule, obloquy, or had a tendency to injure her in her office and occupation. These communications, harmful and injurious on their face, constitute defamation per se.

104. Senator Cervantes is informed and believes, and therefore alleges, that the individual Defendants acted with oppression, fraud, or malice, thus entitling her to recover punitive and exemplary damages pursuant to California Civil Code §3294.

105. On information and belief, Does 1-20 were employees of the City of Sacramento and acted within the course and scope of their employment in taking the actions alleged herein.

106. As a proximate result of Defendants' defamation, Senator Cervantes is entitled to compensatory and punitive damages in an amount to be proven at trial.

**PRAYER**

Plaintiff Sabrina Cervantes prays as follows:

1. For general and special damages in an amount to be proven at trial;

2. For punitive damages in an amount to be proven at trial;

3. Civil penalties as provided by Civil Code §52.1;

4. Costs of suit, including reasonable attorney fees as provided by statute, including but not limited to 42 U.S.C. 1988(b) and California Civil Code §52.1(i); and

5. Any other and further relief that the Court considers proper.

Respectfully submitted,

DATED: April 5, 2026

QUADRA & COLL, LLP

By: *<u>/s/ James A. Quadra</u>*
JAMES A. QUADRA
REBECCA COLL
ROBERT D. SANFORD

Attorneys for Plaintiff Sabrina Cervantes

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

DATED: April 5, 2026

QUADRA & COLL, LLP

By: *<u>/s/ James A. Quadra</u>*
JAMES A. QUADRA
REBECCA COLL
ROBERT D. SANFORD

Attorneys for Plaintiff Sabrina Cervantes

# EXHIBIT A

# CITY OF SACRAMENTO - CLAIM FORM

For official use only

**•••• PLEASE READ INSTRUCTIONS ON OTHER SIDE FIRST ••••**

Name of Claimant: Sabrina (First Name) (Middle Initial) Cervantes (Last Name)

Home Address: c/o Quadra & Coll, 1 Embarcadero Center

City, State, Zip: San Francisco, CA 94111

Daytime (415 ) 426-3502 Evening (415 ) 426-3502

**Type of Loss** ○ Personal Injury ◉ Other See Exhibit A attached hereto. **Police Report #**

○ Property Damage ○ Indemnity-Date complaint served

**When did injury or damage occur?** May 19, 2025 (Month/Day/Year) (Day of Week) (Time) AM/PM

**Where did injury or damage occur?** *(Street address, intersecting streets, or other location)*
See Exhibit A attached hereto.

**How did injury or damage occur?** *(Describe accident or occurrence)* See Exhibit A attached hereto.

**What action or inaction of City employee(s) caused your injury or damage?** See Exhibit A attached hereto.

**What injury or damage did you suffer?** See Exhibit A attached hereto.
See Exhibit A attached hereto.

**Name of any witnesses:** See Exhibit A attached hereto.
*(Name)* *(Address)* *(Phone Number)*

*(Name)* *(Address)* *(Phone Number)*

**Name of City employee(s) involved:** See Exhibit A attached hereto.

**Amount of Claim: Personal Injury $____ Property Damage $____ Other $____**

**Limited Civil Case: Yes____ No** X

***State the amount of your claim if the total amount is $10,000.00 or less. If it is over $10,000.00, no dollar amount shall be stated, but you are required to state whether the claim would be a limited civil case (total amount of claim does not exceed $25,000).***

Damages exceed $25,000.

**ALL NOTICES AND/OR COMMUNICATIONS SHOULD BE SENT TO:**

Name James Quadra Daytime Phone (415 ) 609-6296

Address *(Street, City, State, Zip)*:
Quadra & Coll, 1 Embarcadero Center, SF, CA 94111

WARNING:

CCFORM 6 (Rev 12/14)

It is unlawful to knowingly present or cause to be presented any false or fraudulent claim for payment of a loss or injury. (P.C. § 550(c)(1).) Every person who violates this paragraph is guilty of a felony punishable by imprisonment in state prison for two, three, or five years and by a fine not exceeding fifty thousand dollars ($50,000). (P.C. § 550(c)(1).) Pursuant to Code of Civil Procedure § 1038, the City may seek to recover all costs of defense in the event an action is filed that is later determined not to have been brought in good faith and with reasonable cause.

Declaration and Signature of Claimant(s): I declare under penalty of perjury that I have read the foregoing claim for damages and know the contents thereof; that the same is true of my knowledge and belief, save and except as to those matters stated on information and belief, and as to them, I believe to be true.

Signature: [signature] Relationship: Claimant's Attorney Date: September 8, 2025

CCFORM 6 (Rev 12/14)

# EXHIBIT A

This claim arising out the false arrest of Claimant Sabrina Cervantes on May 19, 2025 by the Sacramento Police Department's wrongly claiming she was driving while under the influence of drugs or alcohol. Since the arrest, Claimant has been completely exonerated from the false allegations by the Sacramento Police Department, and the Sacramento District Attorney's Office has declined to prosecute.

As described below, upon information and belief, Claimant alleges that her false detention and arrest were motivated in retaliation of her political views. In addition, Claimant alleges that her false detention and arrest were motivated in part by animus due to her ethnic background and sexual orientation.

## SENATOR CERVANTES' BACKGROUND

Claimant Sabrina Cervantes is a duly elected California state senator and a member of the Democratic party. She is married and a mother of triplets. Senator Cervantes is a lifelong resident of Riverside County.

First elected to the State Assembly in 2016 California's 58th Assembly District, which encompasses portions of northwestern Riverside County and southwestern San Bernardino County, she was the first openly LGBTQ+ Latina to represent her district in the Assembly. In November 2024, she was elected to represent California's 31st Senate District, which encompasses urbanized and suburban parts of the Inland Empire in northwestern Riverside County. It forms an arc stretching from Corona in the west to Perris in the southeast, centered on the city of Riverside.

Senator Cervantes is the immediate past Chair of the California Latino Legislative Caucus, and is the only representative from the Inland Empire to hold this role in the Caucus' history. As Chair, she led a record-breaking 35 legislative members, including a historic number of 21 Latinas. Senator Cervantes is the current Chair of the State Senate's Elections and Constitutional Amendments Committee. She is a member of California Legislative Women's Caucus, the California Latino Legislative Caucus, the California Native American Legislative Caucus, and the California Legislative LGBTQ Caucus.

During her tenure as the State Assembly and Senate, Senator Cervantes has championed legislation to improve access to maternal mental health services, reduce barriers to student financial aid, protect survivors of sexual assault, and support an inclusive economy. To date, she has had 49 bills signed into law. Through her advocacy, she has secured over $650 million in investments from the State Budget for programs and initiatives that strengthen the economy, wildfire resilience, and voting protections, while increasing access to open spaces and vital resources for working families, children, veterans, and students in her District.

## SB 274 - AUTOMATED LICENSE PLATE RECOGNITION DATA ACCOUNTABILITY ACT

On January 4, 2025, Senator Cervantes introduced State Bill 274 to curb potential abuses associated with use of automated license plate reader (ALPR) systems, which are searchable

computerized databases resulting from the operation of one or more cameras combined with computer algorithms to capture and convert images of registration plates and the characters they contain into computer readable data. The cameras can be mobile, e.g., mounted on patrol cars, or fixed, e.g., mounted on light poles. ALPR systems allow for the widespread and systematic collection of license plate information. Today, over 230 police and sheriff departments in California use Automated License Plate Recognition (ALPR) systems, with dozens more planning to adopt them. For example, the Los Angeles Police Department alone has accumulated more than 320 million license plate scans and the Sacramento Police Department recorded up to 1.7 million scans in just one week.

While ALPR technology can be a useful law enforcement tool, it poses serious risks to privacy when misused. Despite this expansive data collection effort, many police departments have not developed a policy to govern the use of ALPR technology or provided privacy protections. ALPR systems are a form of location surveillance and the data they collect can reveal the travel patterns and daily routines of California drivers, the places drivers visit, and the people with whom they associate. Along with the threat to civil liberties, these data systems pose significant security risks.

In 2020, an audit revealed that ALPR data was being misused across our state. Since then, agencies have continued to share sensitive information with entities like ICE and CBP. This undermines public trust and puts entire communities at risk, particularly immigrants and communities of color.

To curb potential abuses, SB 274 primarily does four things: (1) Requires that license plate data that does not match information contained on a “hot list” must be deleted within 60 days; (2) Requires an ALPR operator to institute safeguards for managing which employees can see the data from their systems; (3) Requires data security training and data privacy training for all employees that access ALPR information; and (4) Requires the Department of Justice (DOJ) to conduct annual random audits of agencies using ALPR to determine whether they have implemented a usage and privacy policy incompliance with the law.

**OPPOSITION TO SB 274**

Law enforcement agencies throughout the State and their associations, such as the California Police Chiefs Association, oppose California SB 274, arguing it would hinder their ability to solve crimes. Sacramento Police Chief Kathy Lester is a member of the California Police Chiefs Association.

**MISUSE OF ALPR DATA BY THE SACRAMENTO POLICE DEPARTMENT**

In its 2024 investigative report titled: *Warning: Keep Your Eyes Off My Privacy*, the Sacramento County Grand Jury found that the Sacramento Police Department, along with other law enforcement agencies operating in Sacramento County, had violated SB 34, which limits the use of ALPR data, by sharing ALPR data with out-of-state law enforcement agencies. The Grand Jury concluded this practice aided the potential prosecution by the home state of women who traveled to California to seek or receive healthcare services.

On August 8, 2025, Sacramento Police Chief Lester responded to the Grand Jury by claiming that the Sacramento Police Department had ceased providing ALPR data to out-of-state law enforcement agencies on June 11, 2024. Chief Lester provided no further information.

**ACCIDENT**

On May 19, 2025, Senator Cervantes was driving a state-owned vehicle heading east on S Street in Sacramento. At approximately 12:55 pm at the intersection of S Street and 14th Street, a driver ran a stop sign and crashed into Senator Cervantes' passenger side door, causing significant damage to the vehicle and injuring her. Senator Cervantes immediately called Senate Special Services, which responded that the State Fleet Manager, who manages state vehicles, would be dispatched to the scene. Senator Cervantes then attempted to reach her wife, and then called her Chief of Staff and asked him to come to the scene. The Fleet Manager and Chief of Staff arrived separately at the scene within minutes of being contacted.

Senator Cervantes' Chief of Staff brought Senator Cervantes to Kaiser Hospital in Sacramento to receive medical treatment, while the Fleet Manager moved Senator Cervantes' vehicle from its location near the curb on the opposite side of S Street where it came to rest after the accident to a safe parking space around the corner on 14th Street.

Upon arriving at the emergency room, Senator Cervantes checked in and waited in the public waiting room, wearing a cap and sunglasses to protect her privacy.

**DISPARATE TREATMENT OF DRIVER WHO CAUSED THE ACCIDENT AND SENATOR CERVANTES**

Upon arriving at the scene of the accident at approximately 1:35 p.m., on information and belief, Sacramento Police Officer Daniel Williams was already aware that one of the vehicles involved in the accident had been driven by Senator Cervantes. When Officer Williams arrived, Senator Cervantes had already left to seek medical care.

Despite clear damage to the vehicles showing that the other driver had t-boned Senator Cervantes' vehicle after entering an intersection where the driver had a stop sign and Senator Cervantes had the right of way, Officer Williams treated the young white woman with deference and respect.

Upon approaching the other driver while she was seated in the driver's seat with a companion in the front passenger seat, he immediately stepped away for more than a minute and patiently waited while she completed a phone call before speaking with her (assuring her, "It's okay, take your time"). He did not ask her to exit the vehicle to check her gait/balance and did not get close enough to detect if there was alcohol on her breath. He did not ask to speak to her privately. He did not question her obviously false story about entering the intersection lawfully. He did not immediately cite her for failing to produce a driver's license in violation of California Vehicle Code Section 12951. He did ask her to submit to any sobriety tests, and asked minimal questions in a leading way designed to help her (e.g., "No alcohol today, right?").

Officer Williams' entire conversation with the at-fault driver lasted less than three minutes, including periods of silence. Officer Williams also spoke to other law enforcement officers on

the scene and the state Fleet Manager on the scene. According to body cam footage, Officer Williams reentered his vehicle at 1:54 pm. There is then a gap in footage until he arrives outside of Kaiser Hospital at 2:21 pm.

Officer Williams first approached Senator Cervantes at the hospital at approximately 2:29 p.m. In contrast to his interview of the at-fault driver, Officer Williams and a second officer, Officer Bailey Foster, interviewed Senator Cervantes for much longer, requiring exact details about what happened during the accident, how fast she had been going, how her vehicle moved after the impact, how her vehicle ended up at rest next to the curb, who she spoke to after the impact, what information was exchanged at the scene, etc. Senator Cervantes explained that she had been propelled into oncoming traffic and managed to direct her vehicle to the curb on the opposite side of the street. In contrast to the leading question Officer Williams offered to the at-fault driver ("*No alcohol today, right?*") he asked Senator Cervantes, "Had you been drinking?" Senator Cervantes responded that she had not. Senator Cervantes also responded to questions about her injuries. During the interview by Officer Williams, Senator Cervantes remained standing despite being in pain from the accident. She displayed no balance issues despite the pain she was experiencing in her back, legs, and entire left side of her body, all of which she described to the officers.

Officer Williams admitted that Senator Cervantes was not at fault for the accident but nevertheless requested that she submit to a subjective sobriety test involving the officer observing Senator Cervantes' eyes in response to stimulus. Senator Cervantes asked whether the at-fault driver had been given such a test, which Officer Williams declined to answer. Senator Cervantes, who had broken no traffic rules and who was the victim of a dangerous driver, was troubled by the officers' attitude and request. Concerned about the officers' motivation and their use of subjective observations to decide whether she was under the influence, Senator Cervantes requested to contact Senate counsel before submitting to the subjective test. She also offered to provide the results of the tests that the hospital could perform to demonstrate her sobriety.

Rather than accept Senator Cervantes' offer of having the hospital provide test results to the police officers, Officer Williams responded that they could not accept the hospital's test result because they are protected by Senator Cervantes' privacy rights. Obviously, Senator Cervantes was able to consent to disclosure of drug and alcohol tests (which the hospital performed, and which were negative), but Officer Williams and Officer Foster wanted to perform their less accurate and subjective test instead of accepting the chemical tests performed by the hospital.

**LACK OF PROBABLE CAUSE AND FALSE STATEMENTS BY OFFICER FOSTER**

Officer Williams' initial interview of Senator Cervantes lasted approximately 10 minutes. She did not slur her words, walk with an unsteady gait, smell of alcohol, or have any indicators of being under the influence. She was suffering from a spine injury, which resulted in moving with care, but she did not sway, stumble, weave back and forth as she walked down a long hallway from the emergency room waiting area to be interviewed, or give any other indicator of being under the influence.

Despite being anxious after having been the victim in a serious accident, Senator Cervantes provided a clear straightforward explanation for how she drove to the curb after she was struck,

despite being injured and in pain. She explained that her vehicle was propelled to the opposite side of the street she was driving on, and to avoid oncoming traffic, she managed to steer the vehicle over to the curb on the opposite side of the street. Security video from a nearby building confirms the accuracy of her statements.

Senator Cervantes was unaware that the Fleet Manager had moved her vehicle from the curb facing oncoming traffic on S street to a safe spot on 14th Street, and therefore misunderstood Officer Williams' question about the car being found around the corner on 14th Street. Nevertheless, Officer Williams certainly must have understood that the vehicle had been moved when he spoke to Senator Cervantes' Chief of Staff a few moments later, who confirmed that the state vehicle was at the curb on S Street when he arrived on the scene. Again, Officer Williams did not ask the at-fault driver any questions about how the vehicle ended up where it was, did not ask her if the vehicle had been moved, did not ask the Fleet Manager where the vehicle was when he arrived at the scene, and did not ask him if he had moved the car out of oncoming traffic on S Street.

In the moments following the initial interview with Senator Cervantes, Officer Foster spoke by phone to a person he referred to as "Sarg" saying, "*I DO think she is intoxicated – the state senator.*" Officer Foster did not advise the sergeant that Senator Cervantes had offered to have the hospital disclose her test results to demonstrate she was sober. He falsely stated that Senator Cervantes was slurring her words. Officer Foster then had an additional phone call a few moments later, again referring to the person he spoke to as "Sarg" and made additional false statements, including stating that Senator Cervantes' "story" did not "add up," because of where the State vehicle was found parked after the accident, even though Officer Foster had been present when Senator Cervantes' Chief of Staff explained that the state car was parked on S Street when he arrived on the scene, and even though neither Officer Foster nor Officer Williams ever asked anyone if the vehicle had been moved after Senator Cervantes left for the hospital, which is evident in video obtained by the Sacramento Police from a nearby security camera.

**SENATOR CERVANTES' SECOND OFFER TO PROVIDE CHEMICAL TEST DEMONSTRATING SOBRIETY**

Approximately 30 minutes after first approaching Senator Cervantes, Officer Williams and Officer Foster decided to inform Senator Cervantes that she was being detained and was in police custody.

At approximately 2:55 pm, before she could reach counsel, Officer Williams approached Senator Cervantes and again asked her to voluntarily submit to a Horizontal Gaze Nystagmus, which is a test that relies on the police officer subjectively judging the eyes' response to stimulus. Senator Cervantes again asked if the person who was at fault for the accident was being subjected to the same treatment, which Officer Williams again declined to answer. Senator Cervantes asked for the justification for testing her, and Officer Williams responded that he was conducting a DUI investigation.

Although she was not under any legal obligation to submit to any type of testing, Senator Cervantes asked again if she could simply receive a blood test instead (which would objectively show that she had taken no drugs or alcohol), and at first Officer Williams seemed to agree, so

Senator Cervantes stated she would step aside to contact counsel to confirm she could provide a blood test.

**DECISION TO OBTAIN WARRANT DESPITE NO PROBABLE CAUSE AND DESPITE OFFER OF VOLUNTARY BLOOD TEST**

At approximately 3:04 p.m., as Senator Cervantes was attempting to reach counsel, Officer Foster received a call on his cell phone, and explained that Senator Cervantes was on the phone checking with counsel about simply providing a blood test. Officer Foster then stated, "*I don't know if THEY still want a warrant*?" Before an answer is provided, Officer Foster appeared to turn off his body camera, resulting in a gap in bodycam footage of approximately five minutes. Turning off his body camera was a violation of Sacramento Police Department's General Order 525.07, which states in part, "Once their BWC is activated, employees shall not deactivate their BWCs until the investigative or enforcement activity has concluded." (Sacramento Police Department General Order 525.07(F)(1).) Furthermore, the policy states, "(4). Employees shall audibly record the reason for deactivation in all instances." (Sacramento Police Department General Order 525.07(F)(4).)

Following that gap in body cam footage, Officer Foster then approached Officer Williams and told him that they would be obtaining a warrant even though Senator Cervantes had stated she would agree to voluntarily provide a blood test and was just checking with counsel, stating, "So, pretty much, no matter what, we're writing a warrant."

While Senator Cervantes was on the phone attempting to reach counsel, Officer Williams also spoke by phone with unknown persons. During those conversations, he stated he only had "reasonable suspicion" (quickly correcting himself when he first incorrectly said "probable cause"), even commenting, "If I had to make a wild guess, there is a possibility – I have a reasonable suspicion that she has something on board…." Neither reasonable suspicion nor a "wild guess" is a basis to effect a lawful arrest in California.

Despite only having a "wild guess" and admittedly having no probable cause to obtain a warrant, at approximately 3:17 p.m., Officer Williams informed Senator Cervantes that regardless of her willingness to provide a blood test, the Sacramento Police Department was getting a warrant to draw her blood. Officer Williams reiterated that she was detained.

The affidavit in support of the warrant was signed under oath by Police Officer Kevin Lucas, and falsely claimed there was probable cause for a blood draw warrant because of supposed "slurred speech," "slow speech," and "unsteady of feet," claiming that when Senator Cervantes walked from the waiting room to a private room to be interviewed by the police officers, that she had an "unsteady gait" and "appeared to be drowsy while speaking to Sacramento Police officers." Outrageously, the warrant affidavit referenced Senator Cervantes' declining to undergo a subjective sobriety test by the officers as part of the reason for the alleged "probable cause," even though Officer Williams repeatedly admitted to Senator Cervantes that it was her absolute right to refuse the test, and that it was purely voluntary. The warrant affidavit also falsely stated that Senator Cervantes had refused to submit to a blood test. Based on the false information in the warrant affidavit submitted to the Sacrament Superior Court under penalty of perjury, the Court issued the warrant.

At approximately 6:10 pm Officer Williams told Senator Cervantes for the first time that she would be cited for driving under the influence and that the citation would be considered an arrest. A few minutes later, Senator Cervantes' blood was drawn. The results of the blood test showed that Senator Cervantes was not under the influence of drugs or alcohol, and the district attorney announced it was not pressing charges.

**FALSE REPORT TO DEPARTMENT OF MOTOR VEHICLES**

At some point after Senator Cervantes' blood was drawn, Officer Williams completed a false statement under penalty of perjury, which the Sacramento Police Department transmitted to the Department of Motor Vehicles. The statement falsely asserted that Senator Cervantes had refused to complete a chemical test after her arrest in violation of California Vehicle Code Section 23612, and that Senator Cervantes had refused to state what time she stopped driving.

Because of this false report, Senator Cervantes' driver's license would have been suspended or revoked. Senator Cervantes was forced to retain counsel to demonstrate to the Department of Motor Vehicles that Officer Williams' sworn statement to DMV that Senator Cervantes committed a "violation" through a "chemical test refusal" was false. The DMV's hearing officer reviewed the evidence provided by Senator Cervantes' counsel, including irrefutable body cam footage showing that Senator Cervantes did not violate any law, and set aside the order that would have suspended her driver's license.

Despite Senator Cervantes' innocence, unknown actors at the Sacramento Police Department maliciously released to the press the false claim that Senator Cervantes had been driving under the influence, to the detriment of Senator Cervantes' reputation.

**MISSING BODY CAM FOOTAGE**

In addition to the apparent improper deactivation of one officer's body camera, the Sacramento Police Department failed to produce the body camera footage of Sergeant Kristen Beal, who came to the hospital and spoke with Senator Cervantes. Furthermore, at least one of the conversations that Officer Williams and/or Officer Foster had on their cell phones was with Sergeant Beal. Follow up requests to the City for Sergeant Beal's missing footage were ignored.

**SACRAMENTO POLICE VIOLATED STATE AND FEDERAL STATUTES**

Sacramento police violated Senator Cervantes' rights under the Fourth Amendment of the U.S. Constitution and Article I, Section 13 of the California Constitution unreasonable searches and seizures by detaining and arresting Senator Cervantes without probable cause and by conducting a blood test by obtaining a warrant without probable cause.

Sacramento Police violated Penal Code §236 by detaining Senator Cervantes without reasonable suspicion or probable cause.

Sacramento Police violated Penal Code §836 by arresting Senator Cervantes without probable cause.

Sacramento Police violated Penal Code §1525 by obtaining a warrant and conducting a blood test of Senator Cervantes without probable cause.

Sacramento Police violated Penal Code Penal Code §118.1 by intentionally and knowingly including false information the police report relating to Sen. Cervantes false arrest.

Sacramento police violated Penal Code §118 by knowingly submitting false statements under oath to the Sacramento Superior Court and the California Department of Motor Vehicles.

**CALIFORNIA STATE LAW CLAIMS**

**California False Imprisonment/Arrest Claim**

Sacramento Police lacked reasonable suspicion to detain or probable cause to arrest Senator Cervantes. The unlawful detention and arrest of Senator Cervantes was effected without a warrant and was a substantial factor in causing Sen. Cervantes harm. (*See Carcamo v. Los Angeles County Sheriff's Dept.* (2021) 68 Cal.App.5th 608, 616 [283 Cal.Rptr.3d 647].)

The City of Sacramento is liable for injuries proximately caused to Senator Cervantes by an act or omission of its employees within the scope of their employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. (*See* Gov. Code, § 815.2(a).)

Senator Cervantes is entitled to recover damages, compensation for lost liberty, humiliation, emotional distress and reputational harm. In addition, given the Sacramento Police acted with malice and oppression, Senator Cervantes is entitled to recover punitive damages.

**California Civil Code § 52.1 - Violation of the Bane Act**

The California Bane Act provides a private right of action for damages against any person who "interferes," or "attempts to interfere by threat, intimidation, or coercion," with the exercise or enjoyment of a constitutional or other right under California or federal law. (Civ. Code, § 52.1, subd. (b)–(c); *see also Zamora v. Sacramento Rendering Co*. (E.D. Cal. 2007) No. Civ. S-05-00789 DFL KJM, 2007 WL 137239, *8, n. 6 [defining intimidation "to make timid or fearful"; *McCue v. S. Fork Union Elem. Sch.* (E.D. Cal. 2011) 766 F. Supp. 2d 1003, 1011 [explaining "[f]or the purposes of the Bane Act, the term 'threat' means 'an "expression of an intent to inflict evil, injury, or damage to another."'] Liability under the Bane Act does not require actual interference with a plaintiff's legal rights. Rather, even an attempted interference is enough to give rise to a Bane Act claim. (Civ. Code, § 52.1, subds. (a), (b); *Ramirez v. County of Los Angeles* (C.D. Cal. 2005) 397 F. Supp. 2d 1208). Public entities are vicariously liable for Bane Act violations. (*See* Gov. Code, § 815.2.)

Sacramento Police officers violated the Bane Act by: interfering by means of intimidation with Senator Cervantes's rights under to be free of unlawful and unreasonable search and seizures under the Fourth Amendment of the U.S. Constitution and Article I, Section 13 of the California Constitution; and by violating Penal Code §§ 236, 836, 118.1 and 1525 as described above.

Sacramento police violated Penal Code §118 by knowingly submitting false statements under oath to the Sacramento Superior Court and the California Department of Motor Vehicles.

Sacramento police officers also violated the Bane Act by knowingly submitting false statements under oath in violation of Penal Code §118 to the Sacramento Superior Court to obtain a warrant without probable cause.

In addition, Sacramento police officers violated the Bane Act knowingly submitting false statements under oath to the California Department of Vehicles (DMV) falsely claiming that Senator Cervantes had violated California Vehicle Code Section 23612 by refusing to submit to a chemical test to determine if she was under the influence after being arrested and admonished. This was patently false and forced Senator Cervantes to successfully defend an administrative action by DMV to regain her driving privileges. Ultimately, a DMV hearing officer set aside the suspension of Senator Cervantes without hearing, finding: "After a review of the information on file, including any evidence which you may have presented, the action(s) effective June 18, 2025, pursuant to §13353 of the Vehicle Code (VC), is set aside."

Sacramento police officers' violation of the Bane Act, was the legal cause of harm to Senator Cervantes. She is, thus, entitled to recover compensatory damages, including compensation for lost of liberty, emotional distress and humiliation. In addition, Senator Cervantes is entitled to recover civil penalties, attorney's fees and punitive damages.

**Intentional Infliction Of Emotional Distress**

Sacramento police officers owed Senator Cervantes a general duty of care under California Civil Code §1714. The officers violated this duty and, instead, engaged outrageous conduct with the intent to cause Senator Cervantes emotional distress or with reckless disregard of the likelihood of causing such distress. As a result of Sacramento Police officers intentional infliction of emotion distress, Senator Cervantes suffered severe emotional distress and is, thus, entitled to recover compensatory damages and punitive damages.

**Defamation**

As described above, unknown Sacramento employees released false information to the press claiming that Senator Cervantes had driven while under the influence or drugs when there was no basis for these false statements. The information was released before the Sacramento Police Department had concluded its investigation.

These false statements were made with the malicious intent of harming Senator Cervantes' reputation and constitute defamation per se. As a result of these false statements, headlines in news sources throughout California and the country proclaimed that Senator Cervantes had been "cited for DUI," seriously damaging Senator Cervantes' previously untarnished reputation. Senator Cervantes is entitled to recover damages for loss of reputation, emotional distress and punitive damages arising from the wrongful dissemination of false claims that Senator Cervantes drove a vehicle while under the influence of alcohol or drugs.

**FEDERAL CLAIMS**

The unlawful acts by Sacramento Police officers also give rise to claims under federal law, including claims for violation of Senator Cervantes' rights under the Fourth Amendment of the U.S. Constitution which are actionable under 42 U.S. Code § 1983. No government claim is required to assert those claims and Senator Cervantes hereby reserves her rights to assert those claims in future litigation.

**NAMES OF CITY EMPLOYEES INVOLVED**

Officer Daniel Williams

Officer Bailey Foster

Officer Kevin Lucas

Sergeant Kristen Beal

**NAMES OF ADDITIONAL WITNESSES**

Senate Fleet Manager Alex Cruz

Senator Cervantes' Chief of Staff Cesar Anda

# EXHIBIT B

SACRAMENTO
Department of Human Resources

October 23, 2025

James Quadra
Quadra & Cole
1 Embarcadero Center
San Francisco, CA 94111

| | | | |
|---|---|---|---|
| RE: | Claimant | : | Sabrina Cervantes |
| | Our File No. | : | 4A25099F4KD-0001 |
| | Date of Loss | : | 05-19-2025 |

Dear Mr. Quadra:

**NOTICE OF CLAIM REJECTION**

**Notice is Hereby Given** that the claim you filed with the Office of the City Clerk for the City of Sacramento on September 8, 2025 was **Rejected by Operation of Law** effective **October 23, 2025.** CA Government Code Section 913 requires the following warning be given when a claim is rejected.

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action in a municipal or superior court of the State of California on this claim. See Government Code Section 945.6. This warning applies only to State claims, and does not apply to statutes of limitations for Federal causes of action. You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Please also be advised that, pursuant to Sections 128.5 and 1038 of the California Code of Civil Procedure, the city will seek to recover all costs of defense in the event a lawsuit is filed in the matter and it is determined that the action was not brought in good faith and with reasonable cause.

If you have any questions, please contact Bernard Sarmiento at (916) 235-0331.

Sincerely,

Tiffany Saich

**Tiffany Saich**
***Personnel Technician***
City of Sacramento

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss: <CCSNUM>
COUNTY OF SACRAMENTO)

I am a citizen of the United States and am employed in the County of Sacramento. I am over the age of eighteen (18) years and am not a party to the within above-titled action. My business address is 915 I Street, Sacramento, CA 95814.

I am readily familiar with the City of Sacramento's practice for collection and processing of correspondence for mailing with the United States Postal Service and that the correspondence would be deposited with the United States Postal Service in the County of Sacramento, California that same day in the ordinary course of business.

On October 23, 2025, I served the within **Notice of Rejection** on the persons interested in said action by placing true copies thereof enclosed in sealed envelopes in the designated area for outgoing mail addressed as set forth below:

James Quadra
Quadra & Cole
1 Embarcadero Center
San Francisco, CA 94111

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Executed on 10/23/2025 at Sacramento, California.

Tiffany Saich
Tiffany Saich

City of
SACRAMENTO
Department of Human Resources
**Risk Management Division**
915 I Street, Fourth Floor
Sacramento, CA 95814-2604

**RETURN SERVICE REQUESTED**

Rts
Needs
Suite#

RECEIVED
NOV 2025
Risk Management

REF

13 IRALNM 94511